1
2
3
4
5
6
7
8
9          UNITED STATES DISTRICT COURT
10         SOUTHERN DISTRICT OF CALIFORNIA
11

12   **CURTIS E. MILLER,**                    CASE NO. 08cv2428 AJB (PCL)

13                              Plaintiff,    **REPORT &**
                                              **RECOMMENDATION**
14                                            **GRANTING DEFENDANTS'**
                                              **MOTION FOR SUMMARY**
15   **T. CATLETT, Correctional Officer, et al.,**   **JUDGMENT**

16                              Defendants.   (Doc. 85.)

17

18                    **I.  INTRODUCTION**

19          Plaintiff Curtis E. Miller ("Plaintiff"), a prisoner proceeding *pro se* and *in forma pauperis*,

20   brought this action under Title 42, United States Code § 1983 against Defendants T. Catlett and A.

21   Amat, both correctional officers, for violations of his First Amendment rights. (Doc. 30.)  Specifically,

22   Plaintiff alleges that Officer Amat and Sergeant Catlett drafted and approved a false rules violation

23   report against him on September 11, 2007 for possession of an inmate-manufactured weapon in order to

24   retaliate against Plaintiff for filing an administrative group appeal on July 14, 2007.  (Doc. 30, at 3.)

25          Pending before this Court is Defendants' Motion for Summary Judgment filed on May 25, 2011.

26   (Doc. 85.)  On June 30, 2011, Plaintiff filed a Response in opposition to Defendants' motion. (Doc. 86.)

27   Defendants filed a Reply to Plaintiff's Opposition to the Motion for Summary Judgment on July 5,

28

                                    1

1 | 2011. (Doc. 88.) For the reasons stated below, the Court recommends that Defendants' Motion be GRANTED.

2 | **II. FACTUAL ALLEGATIONS**

3 |     Plaintiff's narrative begins on the morning of May 30, 2007 after a black prisoner assaulted

4 | Defendant A. Amat, a correctional officer, in housing unit B4 at Calipatria State Prison resulting in

5 | facility B being placed on lockdown. (Doc. 30, at 3.) Plaintiff states that on July 3, 2007, the warden

6 | issued a program status report that allegedly restored some privileges to black prisoners, including

7 | Plaintiff, in facility B but that the black prisoners allegedly were not accorded those privileges in reality.

8 | (Id.) Plaintiff alleges that correctional officers attempted to provoke black prisoners into altercations in

9 | an effort "to have restrictions placed back on said prisoners." (Id.) Plaintiff states that he filed a group

10 | administrative appeal alleging that the warden "and/or his subordinates were retaliating against black

11 | prisoners in B4 for the assault on Defendant Amat." (Id. at 4.)

12 |     Plaintiff then alleges that Defendant Amat approached Plaintiff's cell on September 11, 2007 with

13 | a wrapped object that Defendant Amat accused Plaintiff and his cell mate of having. (Id.) Plaintiff states

14 | that Defendant Amat returned to Plaintiff's cell with Defendant T. Catlett, who ordered that Plaintiff and

15 | his cell mate be placed in restraints and removed from their cell and placed in administrative

16 | segregation. (Id.)  Plaintiff states that Defendants Catlett and Amat both filed crime incident reports:

17 | Defendant Amat reported that he found a wrapped object that turned out to be a weapon in front of

18 | Plaintiff's cell, while Defendant Catlett reported that he found the weapon mixed with laundry in

19 | Plaintiff's cell. (Id.) Plaintiff claims that both reports were falsified. (Id.) Plaintiff also claims that both

20 | Defendants Catlett and Amat falsely endorsed a rule violation report containing a statement that the

21 | weapon was found in laundry that came out of Plaintiff's cell. (Id.) Having received the report on

22 | September 23, 2007, Plaintiff states that he was found not guilty of the offense by the disciplinary

23 | hearing officer on November 20, 2007 and that he was released from administrative segregation on

24 | November 27, 2007. (Id. at 4-5.) Shortly thereafter, Plaintiff filed a grievance against Defendant Catlett.

25 | (Id. at 5.) Plaintiff feared filing a grievance against Defendant Amat because he was still working at

26 | facility B, unlike Defendant Catlett. (Id.) On January 6, 2009, Plaintiff filed a grievance against

27 | Defendant Amat because Plaintiff believed that Amat had been transferred to another facility. (Id.) On

28 | April 10, 2008, Plaintiff was advised that the district attorney declined to prosecute this matter. (Id.)

1    Under this set of facts, Plaintiff claims that Defendants Catlett and Amat retaliated against him for

2    exercising his right to file grievances at Calipatria State Prison. (Id. at 5.) Plaintiff contends that he

3    "suffered severe mental stress, depression, loss of apetite [sic], loss of sleep, loss of association, and loss

4    of enjoyment of life." (Id.)

5                              **III.  PROCEDURAL BACKGROUND**

6          On May 25, 2011, Defendants filed a Motion for Summary Judgment on two grounds: (1) that

7    there is no genuine issue of material fact to support the causation element of a retaliation claim because

8    Defendants had no knowledge of the group misconduct appeal filed by the Plaintiff; and (2) that

9    Defendants had a legitimate correctional goal in drafting the Rules Violation Report against Plaintiff.

10   (Doc. 85, at 6-7.) Further, Defendants argue that as government officials they are entitled to qualified

11   immunity and that Plaintiff's lawsuit should be dismissed as frivolous and malicious within the meaning

12   of the Prison Litigation Reform Act. (Id. at 15-16.) Plaintiff filed a response in opposition to

13   Defendants' Motion for Summary Judgment stating four possible instances that would have made

14   Defendants aware of the group misconduct appeal and claiming that Defendants' legitimate penological

15   purpose is a sham. (Doc. 86, at 16-17.) Defendants filed a reply to Plaintiff's Opposition to Defendants'

16   Motion for Summary Judgment on July 5, 2011. (Doc. 88.)

17                              **IV.  PROFFERED EVIDENCE**

18   **A. Plaintiff's Proffer**

19         1. On the morning of May 30, 2007, Plaintiff was housed in cell 134 of building 4 in facility B at

20   Calipatria State Prison.  (Pl.'s Decl., Doc. 86, at 8.)

21         2. While in his cell on the morning of May 30, 2007, Plaintiff observed Defendant Amat and his

22   coworker assault a black prisoner in the B4 day room.  Black prisoners that were in the day room during

23   the assault came to the aide of the assaulted prisoner and assaulted both Defendant Amat and his

24   coworker.  (Pl.'s Decl., Doc. 86, at 8.)

25         3. In response to the assault, the B4 security alarm was activated. At that time, Plaintiff heard

26   Defendant Catlett yell out "nobody assaults my officers." (Pl.'s Decl., Doc. 86, at 8.)

27         4. Because of the assault, Calipatria was placed on lockdown. (Pl.'s Decl., Doc. 86, at 8.)

28

5. On July 14, 2007, Plaintiff filed a group administrative appeal, alleging that Warden Scribner and his subordinates retaliated against black prisoners in facility B for the assault on correctional officers in B4 on May 30, 2007 and that they intentionally deprived the Facility B Black inmate population of privileges they are entitled to in violation of their due process rights.  (Pl.'s Decl., Doc. 86, at 8; doc. 86-1, at 11-21.)

6. The appeal was reviewed by Chief Deputy Warden T. Ochoa at the second level of appeal review. (Pl.'s Decl., Doc. 86, at 9.)

7. At the second level of review, Lieutenant Sigler, acting on behalf of the chief deputy warden, responded to Plaintiff's group appeal by stating that inmates lost privileges due to "battery on a peace officer" but that the prison was in the process of "restoring inmate privileges in a safe and controlled manner to ensure the safety and security of the Institution, public, inmates and staff." (Doc. 86-1, at 21.)

8. On September 11, 2007, Plaintiff observed from his cell Defendant Amat pick up a wrapped object that was in plainview off the day room floor.  Defendant Amat then asked Plaintiff's cell mate whether the object would "stick him?" Plaintiff's cell mate replied, "I don't know, what is it?" Defendant Amat replied, "You should know; it came out of your cell," and walked away. (Pl.'s Decl., Doc. 86, at 9.)

9. Defendant Amat returned to Plaintiff's cell with Defendant Catlett and ordered both Plaintiff and his cell mate to be placed in administrative segregation. (Pl.'s Decl., Doc. 86, at 9.)

10. Both Defendants Amat and Catlett were aware that neither Plaintiff nor his cell mate were accountable for possession of the weapon found in the day room.  (Pl.'s Decl., Doc. 86, at 10.)

11. Defendant Amat admitted that he did not see Plaintiff or his cell mate in possession of the laundry found in the day room of Calipatria State Prison Facility B building 4 on September 11, 2007. (Doc. 86-1, at 25.)

12. Defendant Amat admitted that he did not witness Plaintiff or his cell mate in actual possession of the weapon but found it hidden inside the laundry that either Plaintiff or his cell mate had placed directly outside of their cell for pickup.  (Doc. 86-1, at 25.)

13. As a result of Defendants' actions, Plaintiff suffered severe mental distress, loss of sleep and appetite.  (Pl.'s Decl., Doc. 86, at 10.)

08cv2428 AJB

**B. Defendants' Proffer**

1. Defendant Amat had no awareness of Plaintiff's July 2007 group appeal at any time before Plaintiff filed the instant lawsuit. (Amat Decl. ¶ 5.)

2. Plaintiff admitted at his deposition that he did not specifically name Defendant Amat in his July 2007 group appeal. (Aronis Decl., Exhibit B, Pl.'s Deposition at 45:1-11.)

3. Plaintiff admitted at his deposition that Defendant Amat did not have any role in processing or responding to the group appeal.  (Aronis Decl., Exh. B, Pl.'s Deposition at 41:6-43:20.)

4. Plaintiff testified at his deposition that Defendant Amat never mentioned his July 2007 group appeal in any conversation between them. (Aronis Decl., Decl. B, Pl.'s Deposition at 54:6-55:19.)

5. Defendant Catlett had no awareness of Plaintiff's July 2007 group appeal at any time before Plaintiff filed the instant lawsuit. (Catlett Decl. ¶ 4.)

6. Plaintiff admitted at his deposition that he did not specifically name Defendant Catlett in his July 2007 group appeal. (Aronis Decl., Exh. B, Pl.'s Deposition at 45:1-11.)

7. Plaintiff admitted at his deposition that Defendant Catlett did not have any role in processing or responding to the group appeal. (Aronis Decl., Exh. B, Pl.'s Deposition at 41:6-43:20.)

8. Plaintiff testified at his deposition that Defendant Catlett never mentioned his July 2007 group appeal in any conversation between them. (Aronis Decl., Exh. B, Pl.'s Deposition at 56:6-12.)

9. While collecting laundry in Facility B at Calipatria State Prison on September 11, 2007, Defendant Amat discovered an inmate-manufactured weapon wrapped in paper and concealed in the laundry resting on the floor directly in front of the cell belonging to Plaintiff and his cell mate, Terrill Bell. (Amat Decl. ¶ 3.)

10. In Defendant Amat's crime/incident report, he stated, ". . . while collecting laundry in front of cell 134 jointly occupied by inmate Miller, H-40805, and Bell, K-70650, I found an item wrapped in paper and plastic measuring approximately 3 inches in length. I took possession of the item and immediately took the item to Sergeant Catlett . . . ."  (Doc. 85-6, at 18.)

11. Upon discovering the weapon, Defendant Amat asked Plaintiff and his cell mate Bell about it. Both inmates denied any knowledge of the weapon. Because Defendant Amat discovered the weapon concealed in the laundry that came from their cell, and because he could not determine at the time which

1   inmate was responsible for possessing and concealing it, Defendant Amat drafted rules violation reports

2   against both Plaintiff and Bell. (Amat Decl. ¶ 4 & Ex.'s A & B.)

3        12. In Defendant Catlett's crime/incident report, he stated, "Officer Amat approached me with an

4   object that was wrapped in tissue paper. The object was found mixed in with laundry from cell B4-134

5   that was occupied by inmates Miller, H-40805, and Bell, K-70650."  (Doc. 85-6, at 17.)

6        13. After Defendant Amat presented the weapon to Defendant Catlett and told him where it was

7   found, Defendant Catlett approved both rules violations reports and assisted Defendant Amat in

8   escorting Plaintiff and inmate Bell to the program office to be placed in holding cells pending their

9   transfers to administrative segregation. (Catlett Decl. ¶ 2.)

10        14. Both Plaintiff and Bell were housed in administrative segregation until their hearings were

11   held on their respective rules violation reports. Each of them was found not guilty of possessing the

12   weapon due to insufficient evidence. This outcome was not unusual given that the weapon was

13   discovered in a common area that was not under the exclusive control of either of them. (Catlett Decl. ¶

14   3.)

15        15. Defendants Amat and Catlett were obligated under the California Code of Regulations to issue

16   the rules violation reports and attempt to hold Plaintiff and Bell accountable for possession of the

17   weapon. (Catlett Decl. ¶ 3.)

18        16. Plaintiff's cell mate, Terrill Bell, was not part of Plaintiff's July 2007 administrative group

19   appeal. Plaintiff admitted at his deposition that Bell did not sign the group appeal, and thus was not part

20   of it. (Aronis Decl., Exh. B, Pl.'s Deposition at 89:1-90:10.)

21        17. Plaintiff admitted at his deposition that he had no evidence, other than a request for mental

22   health services he submitted, to support his allegation that he suffered "mental stress, depression, loss of

23   appetite," or any other psychological injuries alleged in the First Amended Complaint. (Aronis Decl.,

24   Exh. B, Pl.'s Deposition at 68:1-71:4.)

25                          **V.  STANDARD OF REVIEW**

26        Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to

27   any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P.

28   56(c); Adickes v. SH. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema,

1   <u>Inc.</u>, 364 F.3d 1075, 1080 (9th Cir. 2004). Thus, a motion for summary judgment under FED. R. CIV. P.

2   56 addresses the sufficiency of the evidence, or of the law, to support the plaintiff's claims.  <u>Warren v.</u>

3   <u>City of Carlsbad</u>, 58 F.3d 439, 441 (9th Cir. 1995).  The party seeking summary judgment bears the

4   initial burden of informing the court of the basis for its motion and of identifying the portions of the

5   declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of

6   material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Soremekun v. Thrifty Payless, Inc.</u>,

7   509 F.3d 978, 984 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the suit under

8   the governing law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986). A dispute is

9   "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for

10   the non-moving party. <u>Anderson</u>, 477 U.S. at 248; <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185

11   (9th Cir. 2006).

12        Where the moving party will have the burden of proof on an issue at trial, the movant must

13   affirmatively demonstrate that no reasonable trier of fact could find other than for the movant.

14   <u>Soremekun</u>, 509 F.3d at 984. Where the non-moving party will have the burden of proof on an issue at

15   trial, the movant may prevail by presenting evidence that negates an essential element of the

16   non-moving party's claim or by merely pointing out that there is an absence of evidence to support an

17   essential element of the non-moving party's claim. <u>Id.</u>; <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.</u>,

18   210 F.3d 1099, 1105 (9th Cir. 2000). If a moving party fails to carry its burden of production, then "the

19   non-moving party has no obligation to produce anything, even if the non-moving party would have the

20   ultimate burden of persuasion." <u>Nissan Fire & Marine</u>, 210 F.3d at 1102. If the moving party meets its

21   initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any

22   material fact actually exists. <u>See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586

23   (1986); <u>Nissan Fire & Marine</u>, 210 F.3d at 1103. The opposing party cannot "'rest upon the mere

24   allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts

25   showing that there is a genuine issue for trial.'" <u>Estate of Tucker v. Interscope Records, Inc.</u>, 515 F.3d

26   1019, 1030 (9th Cir. 2008) (quoting FED. R. CIV. P. 56(e)).

27        The evidence of the opposing party is to be believed, and all reasonable inferences that may be

28   drawn from the facts placed before the court must be drawn in favor of the opposing party. <u>See</u>

Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003). Nevertheless, inferences are not drawn out of the air; rather, it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Juell v. Forest Pharms., Inc., 456 F. Supp. 2d 1141, 1149 (E.D. Cal. 2006); UMG Recordings, Inc. v. Sinnott, 300 F. Supp. 2d 993, 997 (E.D. Cal. 2004). "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." Del Carmen Guadalupe v.. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007).  Further, a "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'" Anderson, 477 U.S. at 249; Hardage v. CBS Broad. Inc., 427 F.3d 1177, 1183 (9th Cir. 2006). Self-serving declarations, uncorroborated by other testimony or other persuasive evidence, cannot create a genuine issue of fact sufficient to defeat summary judgment. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).  Additionally, while the court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, the court is not required to examine the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references. See Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). After discovery, if the non-moving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. See Nissan Fire & Marine, 210 F.3d at 1103.

## VI. DISCUSSION

### A. There's No Genuine Issue of Material Fact Re: Causation Element of Retaliation Claim.

A prison official may be in violation of the First Amendment if he acts against an inmate in retaliation for using the prison grievance process or pursuing civil rights litigation. Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled

08cv2428 AJB

1    the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a

2    legitimate correctional goal." Id. at 567-68.

3        The burden is on the plaintiff to provide evidence showing a link between the alleged retaliation

4    and the exercise of a First Amendment right. Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314

5    (9th Cir. 1989). The plaintiff must show that the exercise of the First Amendment right was the

6    substantial or motivating factor behind the defendant's actions. Id. To raise a genuine issue of material

7    fact as to retaliatory motive, the plaintiff must produce, "in addition to evidence that the defendant knew

8    of the protected speech, at least (1) evidence of proximity in time between the protected speech and the

9    allegedly retaliatory decision, (2) evidence that the defendant expressed opposition to the speech or (3)

10   evidence that the defendant's proffered reason for the adverse action was false or pretextual." Pinard v.

11   Clatskanie School Dist. 6J, 467 F.3d 755, 771 n.21 (9th Cir. 2006). Circumstantial evidence of the the

12   defendant's retaliatory intent is sufficient to survive a summary judgement motion. Mendocino

13   Environmental Center v. Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999).

14       Plaintiff argues that Defendants knew about the group misconduct appeal he had filed in July

15   2007 and claims that such knowledge motivated Defendants to violate his First Amendment rights on

16   September 11, 2007. (Doc. 86, at 16-17.) Plaintiff lists four instances as evidence that Defendants would

17   have been alerted to the existence of the group appeal: (1) an investigation of the allegations in the

18   group appeal would have required the Defendants to be contacted and interviewed; (2) Chief Deputy

19   Warden T. Ochoa directed the appeals coordinator to screen out Plaintiff's complaints concerning the

20   Defendants; (3) appeals coordinator, M. Ormand, provided the Defendants with a perjured declaration;

21   and (4) appeals coordinator, D. Edwards, retaliated against Plaintiff for filing a complaint against the

22   staff. Id. Defendants maintain that Plaintiff, other than providing a self-serving declaration stating that

23   the Defendants knew of the July 2007 group appeal, provided no corroborating evidence that

24   Defendants actually had prior knowledge of the group appeal before the incident that took place on

25   September 11, 2007.

26       Looking through the record, the Court finds that Plaintiff failed to provide any corroborating

27   evidence to support his declaration that Defendants knew of the July 2007 group appeal before the

28   September 11, 2007 incident. Defendants, on the other hand, have provided evidence that Defendants

did not become aware of the group appeal until after the filing of the instant lawsuit. (Doc. 85-1, at 10-13.) For instance, Plaintiff stated under oath that neither Defendant made any comments regarding the group misconduct appeal and that Plaintiff had not mentioned the group appeal to any staff members except Lieutenant Sigler, who investigated the grievance. (Doc. 85-4, at 16.) In the group appeal, Plaintiff alleged misconduct against "Warden Scribner and his subordinates" and did not mention either Defendant in the group appeal. (Id. at 50.) Although Plaintiff claims that Defendants must have been interviewed in order to resolve his July 2007 appeal and would have been made aware of the grievance through the investigating process, (doc. 86, at 16), Lieutenant Sigler's decision on the appeal made no mention of employee interviews and was tailored to determining whether inmate privileges had been properly suspended and not to examining the conduct of specific employees of the prison. (Doc. 85-4, at 58.) Moreover, the incidents involving Ochoa, Ormand, and D. Edwards have no bearing on the causation element of Plaintiff's retaliation claims against Defendants. Besides Plaintiff's self-serving declaration stating that Defendants had prior knowledge of the May 30, 2007 incident, Plaintiff has only made conclusory allegations without evidentiary support of the causation element of his claim. Because Plaintiff failed to present a genuine issue of material fact on the causation element of the retaliation claims, Defendants' Motion for Summary Judgment should be GRANTED on this ground.

**B. There Is No Genuine Issue Of Material Fact Re: Legitimate Correctional Goal.**

Plaintiff argues that the claim that Defendants had a legitimate penological goal in drafting the Rules Violation Report against him for the September 11, 2007 incident is a sham. (Doc. 86, at 17, 18.) Defendants maintain that they had a duty to report finding the weapon in front of Plaintiff's cell and attempt to hold Plaintiff and his cell mate accountable for placing it there. (Doc. 88, at 4, 5.)

"A successful retaliation claim requires a finding that 'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals.'" Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (citation omitted). A valid penological goal would be the security and safety of prison officials, inmates, and the correctional facility. See Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003). The plaintiff "bears the burden of pleading and proving the absence of correctional goals for the conduct of which he complains." Pratt, 65 F.3d at 806.

08cv2428 AJB

1        Plaintiff argues that the discrepancies between the Crime/Incident Reports and the Rules Violation

2   Reports regarding where the weapon was found on September 11, 2007 shows that neither the Plaintiff

3   nor his cell mate had possession or control of the weapon as required under prison regulations for

4   drafting reports on weapon possession. (Doc. 86, at 17-18.) Though the Rules Violation Report stated

5   that the weapon was found "in the laundry that came out of" Plaintiff's cell and the Crime/Incident

6   Report mentions the weapon was found by Defendant Amat while he was collecting laundry, both

7   documents report the weapon was recovered from "in front of" Plaintiff's cell and do not contain an

8   apparent discrepancy. (Doc. 85-6 at 6, 18.) After further investigation, Plaintiff and his cell mate were

9   found not guilty of possession of the weapon due to lack of evidence. (Doc. 85-5, at 2.) Under the

10  California Code of Regulations, possession or control of a weapon is considered a serious rules

11  violation, and prison employees have an obligation to document such incidents. (Id.) Defendant Amat

12  had a duty to report the discovery of the weapon in front of Plaintiff's cell for the valid penological

13  purpose of security and safety even if there was ultimately not enough evidence to hold him accountable

14  for it. (Id.) Other than providing his own self-serving declaration that there was no valid penological

15  purpose in Defendants' filing the violation reports, Plaintiff has provided no other evidence proving the

16  absence of a correctional goal for Defendants' conduct.  Thus, Plaintiff has failed to provide a genuine

17  issue of material fact in regards to the legitimate correctional goal element of the retaliation claim, and

18  Defendants Motion for Summary Judgment should be GRANTED on this issue.

19      **C.  Defendants Are Not Entitled to Qualified Immunity.**

20       Qualified immunity is an affirmative defense that shields government officials "from liability for

21  civil damages insofar as their conduct does not violate clearly established statutory or constitutional

22  rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818

23  (1982). The purpose of qualified immunity defense is to shield government officials from liability for

24  reasonably performing their duties while holding them accountable for their actions if they act

25  unreasonably. Pearson v. Callahan, 555 U.S. 223, 231 (2009). The Supreme Court dictated a two-prong

26  test in Saucier v. Katz, 533 U.S. 194 (2001), to determine whether a government official is entitled to

27  qualified immunity. Id. at 201 (as modified by Pearson v. Callahan, 555 U.S. 223, 231 (2009)). First,

28  examining the alleged facts in favor of the plaintiff, the court must consider whether the alleged facts

1   show the government official's actions violated the plaintiff's constitutional rights. Id. at 201. In the

2   second inquiry, the court must determine whether the constitutional right that was potentially violated

3   was clearly established in the specific context of the case at hand. Id. For a constitutional right to be

4   clearly established, it must be obvious to a reasonable officer that his conduct would be illegal and

5   violate the constitutional right of the plaintiff. Anderson v. Creighton, 483 U.S. 635, 639-40 (1987).

6       Here, Defendants Catlett and Amat are not entitled to qualified immunity because the alleged facts

7   – viewed in light most favorable to Plaintiff – potentially show a violation of Plaintiff's constitutional

8   right to file grievances, which is a clearly established constitutional right. See Rhodes v. Robinson, 408

9   F.3d 559, 567 (9th Cir. 2005). Granting summary judgment based on qualified immunity is not

10  appropriate in this case.

11

12      **D.  Plaintiff's Action is Neither Frivolous Nor Malicious within the Meaning of the PLRA.**

13      Defendants request that this Court determine whether the instant case should be deemed frivolous

14  or malicious within the meaning of 28 U.S.C. § 1915(g), which states that a prisoner may not proceed *in*

15  *forma pauperis* (IFP) "if the prisoner has, on three or more occasions, while incarcerated or detained in

16  any facility, brought an action or appeal in a court of the United States that was dismissed on the

17  grounds that it was frivolous, malicious, or fails to state a claim upon which relief could be granted." 28

18  U.S.C. § 1915(g).  The Ninth Circuit has determined that a "frivolous" case has "no basis in law or

19  fact." Andrews v. King, 398 F.3d 1113, 1121 (9th Cir. 2005). "Malicious" has been defined by the Ninth

20  Circuit as "filed with the intention or desire to harm another." Id. (internal quotations omitted).

21      Here, the Court denied Defendants' motion for judgment on the pleadings for failure to state a

22  retaliation claim because Plaintiff made plausible retaliation claims against Defendants. (See doc. 58.)

23  Although Plaintiff failed to back up his claims against Defendants with enough evidence to survive

24  summary judgment, this does not mean that Defendants have shown Plaintiff's claims to be fanciful with

25  *no basis* in law or fact. Moreover, Defendants have failed to put forth any evidence that Plaintiff filed

26  the instant case "with the intention or desire to harm another." Thus, it cannot be said that the instant

27  action should be deemed frivolous or malicious within the meaning of the IFP statute. Thus, Defendants'

28  motion for issuance of such a finding should be DENIED.

    ///

08cv2428 AJB

**VII. CONCLUSION**

The Court RECOMMENDS that Defendant's Motion for Summary Judgment should be GRANTED on the grounds that there are no genuine issues of material fact regarding the causation element and the legitimate correctional goal element of the retaliation claims against Defendants Catlett and Amat. The Court RECOMMENDS denying Defendants' use of the qualified immunity defense and Defendants' request to find Plaintiff's case frivolous and malicious.

This Report and Recommendation is submitted to United States District Judge Anthony J Battaglia, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California. Any written objections to this Report and Recommendation must be filed with the Court and a copy served on all parties on or before **October 14, 2011.** The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed on or before **October 24, 2011.** The parties are advised that failure to file either of these documents within the specified time periods may waive the right to raise those objections on appeal of this Court's order.  Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATE: October 3, 2011

_____
Peter C. Lewis
U.S. Magistrate Judge
United States District Court