UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS E. MILLER,<br><br>　　　　　　Plaintiff,<br>v.<br><br>T. CATLETT,<br><br>Correctional Officer, et. al,<br><br>　　　　　　Defendants. | Civil No.08-cv-2428 AJB (PCL)<br><br>ORDER OVERRULING OBJECTIONS; ADOPTING REPORT AND RECOMMENDATION AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>[Doc. Nos. 95, 96 and 101] |

On October 3, 2011, Judge Lewis filed a Report and Recommendation (hereinafter "R&R"), [Doc. No. 95], containing findings and conclusions, upon which he bases his recommendation that the Court grant in part and deny in part Defendants' motion for summary judgment, [Doc. No. 85]. Defendants filed a timely objection, [Doc. No. 96], to a portion of the R&R, but move this Court to affirm Judge Lewis' decision and enter judgment in favor of Defendants and against Plaintiff.  The Plaintiff also filed a timely objection, [Doc. No. 101]. The Court has considered the R&R and the objections filed by the parties and (1) overrules the abjections filed by theobjections filed by the parties; (2) adopts Judge Lewis' recommendations, (3) grants summary judgment terminating this case, and (4) issues a certificate of appealability.

For the reasons set forth below, the Court OVERRULES all objections made by Defendants and Plaintiff, and ADOPTS the Report and Recommendation in its entirety and GRANTS Defendants' Motion for Summary Judgment.

### *Background*

Plaintiff's narrative begins on the morning of May 30, 2007 after a black prisoner assaulted Defendant A. Amat, a correctional officer, in housing unit B4 at Calipatria State Prison resulting in facility B being placed on lockdown. [Doc. No. 30, at 3]. Plaintiff states that on July 3, 2007, the warden issued a program status report that allegedly restored some privileges to black prisoners, including Plaintiff, in facility B but that the black prisoners allegedly were not accorded those privileges in reality. *Id.* Plaintiff alleges that correctional officers attempted to provoke black prisoners into altercations in an effort "to have restrictions placed back on said prisoners." *Id.* Plaintiff states that he filed a group administrative appeal alleging that the warden "and/or his subordinates were retaliating against black prisoners in B4 for the assault on Defendant Amat." *Id.* at 4.

Plaintiff then alleges that Defendant Amat approached Plaintiff's cell on September 11, 2007 with a wrapped object that Defendant Amat accused Plaintiff and his cell mate of having. *Id.* Plaintiff states that Defendant Amat returned to Plaintiff's cell with Defendant T. Catlett, who ordered that Plaintiff and his cell mate be placed in restraints and removed from their cell and placed in administrative segregation. [Doc. No. 30, at 4]. Plaintiff states that Defendants Catlett and Amat both filed crime incident reports: Defendant Amat reported that he found a wrapped object that turned out to be a weapon in front of Plaintiff's cell, while Defendant Catlett reported that he found the weapon mixed with laundry from Plaintiff's cell. *Id.* Plaintiff claims that both reports were falsified. *Id.* Plaintiff also claims that Defendants Catlett and Amat falsely endorsed a rule violation report containing a statement that the weapon was found in laundry that came out of Plaintiff's cell. *Id.* Having received the report on September 23, 2007, Plaintiff states that he was found not guilty of the offense by the disciplinary hearing officer on November 20, 2007 and that he was released from administrative segregation on November 27, 2007. *Id.* at 4-5. Shortly thereafter, Plaintiff filed a grievance against Defendant Catlett. [Doc. No. 30, at 5]. Plaintiff feared filing a grievance against Defendant Amat because he was still working at facility B, unlike Defendant Catlett. *Id.* On January 6, 2009, Plaintiff filed a grievance

against Defendant Amat because Plaintiff believed that Amat had been transferred to another facility. *Id.* On April 10, 2008, Plaintiff was advised that the district attorney declined to prosecute this matter. *Id.*

Under this set of facts, Plaintiff claims that Defendants Catlett and Amat retaliated against him for exercising his right to file grievances at Calipatria State Prison. *Id.* at 5. Plaintiff contends that he "suffered severe mental stress, depression, loss of appetite [sic], loss of sleep, loss of association, and loss of enjoyment of life." [Doc. No. 30, at 5.]

## *Discussion*

Under 28 U.S.C. § 636(b)(1)(C), in reviewing the magistrate judge's report and recommendation, the district court "shall make a de novo determination of those portions of the report ... to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."

Defendants filed objections to the R&R and requested the Court review whether Defendants are entitled to qualified immunity for the actions described in this case. Plaintiff also objects to portions of the R&R and requested the Court review whether: (1) Plaintiff presented a genuine dispute of material fact on the causation element of the retaliation claims; and (2) Plaintiff provided a genuine dispute of material fact in regards to the legitimate correctional goal element of the retaliation claim.

### *1. Whether Defendants Are Entitled to Qualified Immunity for the Actions Described*

Defendants argue that the R&R misapplied the two-prong test established by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001) for determining whether qualified immunity applies. [Doc. No. 30, at 5.] To find qualified immunity, the Court must first consider whether the facts alleged, taken in the light most favorable to Plaintiff, show that the government officials' conduct violated a constitutional right. *Id.* at 201. Second, "if a violation could be made out on a favorable view of the parties' submissions," the Court must determine whether the constitutional right that was potentially violated was clearly established in the specific context of the case at hand. *Id.* Defendants object to the R&R on three grounds. First, Defendants maintain that because the Magistrate Judge concluded there is no evidence of a constitutional violation, "the inquiry should stop there, and qualified immunity need not be reached." (citing *Saucier*, 533 U.S. at 200). [Doc. No. 96, at 3.] Second, Defendants object that it

was not appropriate for the court to consider the evidence in the case in connection with the substantive claim of a constitutional violation, but to not consider the same evidence in connection with the qualified immunity defense. *Id.*   Third, Defendants argue that in determining whether the constitutional violation alleged was clearly established, the court considered the retaliation claim in the abstract, rather than considering the fact specific context in which Defendants acted in this case. *Id.*  The Court is not persuaded by Defendants' argument.

The Court reviewed the record and finds the magistrate judge appropriately determined that Defendants are not entitled to qualified immunity.  Defendants argue that qualified immunity should not have been reached because the magistrate judge already found there to be no evidence of a constitutional violation. *Id.*.  The test for qualified immunity, however, is even less stringent than the test the magistrate judge used to find summary judgment on the substantive claim.  Whereas qualified immunity considers the alleged facts on its face, a motion for summary judgment under Fed. R. Civ. P. 56 addresses the sufficiency of the evidence, or of the law, to support the plaintiff's claims. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  Because of the differing legal standards, different conclusions could therefore be reached on the two separate legal issues.  Thus, the magistrate judge did not err in deciding qualified immunity after reaching a conclusion for summary judgment on the substantive claim.

Defendants also argue that the magistrate judge inappropriately dismissed the case's evidence, or lack thereof, in connection with the qualified immunity defense. [Doc. No. 96, at 3.] Again, the first inquiry of the qualified immunity test addresses whether a violation could be made out on a favorable view of the parties' submissions.  *Saucier*, 533 U.S. at 201.  The test does not, as Defendants suggest, address the sufficiency of the evidence to support whether a violation actually occurred.  This Court therefore shares the magistrate judge's finding that the alleged facts, viewed in light most favorable to Plaintiff, potentially show a violation of Plaintiff's constitutional right to file grievances.  [Doc. No. 95, at 12.] Here, Plaintiff alleges that Defendants drafted and approved a false rules violation report against him in order to retaliate against Plaintiff for filing an administrative group appeal.   [Doc. No. 30, at 5.] Not withstanding sufficient evidence to prove Plaintiff's claim, a constitutional right would have been

violated were the allegations established. The magistrate judge thus appropriately decided the qualified immunity defense based only on the alleged facts viewed most favorably to Plaintiff.

Defendants similarly object to the R&R by claiming the retaliation claim was considered in the abstract, rather than the fact-specific context in which Defendants acted in this case. [Doc. No. 96, at 3-4.] Defendants again confuse the qualified immunity test with one that considers the facts as illuminated by the *evidence presented* as opposed to only considering the facts in light most favorable to Plaintiff. *Id.* at 4. The R&R did not consider the retaliation claim in the abstract. Instead, the magistrate judge based the qualified immunity finding on the alleged facts as if they were established. [Doc. No. 95, at 12]. Thus, the fact-specific context of the case was considered by the magistrate judge when the determination was made that the Defendants were not entitled to qualified immunity. Taking the claim on its face, Plaintiff's constitutional right to file grievances would have been violated if Defendants in fact drafted and approved a false rules violation report against him in retaliation for filing the administrative group appeal. Furthermore, the alleged action taken by Defendants would have violated a clearly established constitutional right to file grievances, because a reasonable officer could not have believed their retaliatory conduct did not violate federal law.

Thus, under *Saucier's* two-prong test for determining whether the qualified immunity defense applies, the magistrate judge appropriately determined that the defense is not appropriate in this case. The record reveals that the magistrate judge considered the alleged facts in light most favorable to Plaintiff. Further, in considering the allegations as if they were established, a potential violation of Plaintiff's clearly established constitutional right to file grievances was established. Based upon the foregoing, the Defendants' objection is OVERRULED and the Court ADOPTS the magistrate judge's findings on this issue.

### 2. Whether Plaintiff Presented a Genuine Dispute of Material Fact on the Causation Element of the Retaliation Claims

A viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson,* 408 F.3d 559,

567-568 (9th Cir. 2005). To raise a genuine dispute of material fact as to retaliatory motive, the plaintiff must produce, "in addition to evidence that the defendant knew of the protected speech, at least (1) evidence of proximity in time between the protected speech and the allegedly retaliatory decision, (2) evidence that the defendant expressed opposition to the speech or (3) evidence that the defendant's proffered reason for the adverse action was false or pretextual." *Pinard v. Clatskanie School Dist. 6J*, 467 F.3d 755, 771 n.21 (9th Cir. 2006).

The magistrate judge found that Plaintiff failed to provide any corroborating evidence to support his declaration that Defendants knew of the July 2007 group appeal before the September 11, 2007 incident. [Doc. No. 95, at 9-10.] Plaintiff argues that a legitimate inference can be drawn from the conduct of T. Ochoa, M. Ormand and D. Edwards that would have alerted Defendants, directly or indirectly, of Plaintiff's July 2007 group appeal. [Doc. No. 101, at 3-4.] Specifically, Plaintiff lists four instances as evidence that Defendants would have been alerted to the existence of the group appeal: (1) an investigation of the allegations in the group appeal would have required Defendants to be contacted and interviewed; (2) Chief Deputy Warden T. Ochoa directed the appeals coordinator to screen out Plaintiff's complaints concerning Defendants; (3) appeals coordinator, M. Ormand, provided Defendants with a perjured declaration; and (4) appeals coordinator, D. Edwards, retaliated against Plaintiff for filing a complaint against the staff. [Doc. No. 86, at 16-17.]

The Court adopts the R&R's finding that Plaintiff failed to provide any corroborating evidence to support that Defendants were alerted of the group appeal in any of the four aforementioned instances. [Doc. No. 95, at 9-10.] Plaintiff relies on *Espinal v. Goord*, 558 F.3d 119 (2nd Cir. 2009) to show a legitimate inference that Defendants were aware of the July 2007 appeal. [Doc. No. 101, at 3-4.] In *Espinal,* the plaintiff filed suit under 42 U.S.C. §1983 claiming, among other things, correctional officers used excessive force to retaliate against him for a prior lawsuit filed against the Department of Corrections and various officers. *Espinal*, 558 F.3d at 120-121. *Espinal*, however, differs in that a specific defendant in the second lawsuit was also a defendant in the first action. *Id.* at 130. The court in *Espinal* therefore found a legitimate inference could be made that the officer who was a defendant in both lawsuits could have made the defendant named only in the second action aware of the first. *Id*.

Here, Plaintiff's initial administrative group appeal did not mention or name either Defendant. [Doc. No. 85-4, at 50.] Instead, the alleged misconduct was against "Warden Scribner and his subordinates." *Id.* Unlike *Espinal*, no legitimate inference could be made that Defendants were aware of the previous action because neither of them were mentioned in the group appeal and there is no evidence that either was ever put on notice of any such action. *Id.* Plaintiff's statements that Defendants were made aware of the grievance through the investigation process lacks corroborating support. [Doc. No. 86, at 16.] There is no evidence to show that either Defendants needed to be contacted regarding the group misconduct appeal. Furthermore, the appeal decision made no mention of employee interviews and did not signal that either Defendant was involved in the investigation process. [Doc. No. 85-4, at 58.] Moreover, Plaintiff stated under oath that he had never spoken to any staff members, except Lieutenant Sigler, about the group appeal and that neither Defendant ever made a comment to him about it. *Id.* at 16. The magistrate judge also appropriately found that the incidents involving Ochoa, Ormand, and D. Edwards provide no evidence as to whether Defendants were alerted to the existence of the group appeal. [Doc. No. 95, at 9.] Plaintiff thus failed to provide any corroborating evidence to support his claim that Defendants knew of the July 2007 group appeal before the September 11, 2007 incident. Therefore, Plaintiff did not present a genuine dispute of material fact on the causation element of the retaliation claims and the Plaintiff's objection on this issue is OVERRULED.

   *3. Whether Plaintiff Presented a Genuine Dispute of Material Fact on the Legitimate Correctional Goal Element of the Retaliation Claims*

"A successful retaliation claim requires a finding that 'the prison authorities retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals.'" *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). "The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." *Id.* The court "should 'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Id.* at 807.

Plaintiff objects to the R&R's finding that Plaintiff failed to provide a genuine dispute of material fact in regards to the legitimate correctional goal element of the retaliation claim. [Doc. No.

95, at 11.] Plaintiff alleges that a legitimate correctional goal did not exist because (1) Defendants falsified their reports; (2) the Crime/Incident Reports and the Rules Violation Reports contained discrepancies as to where the weapon was found; (3) Plaintiff and cell mate were ultimately found not guilty of possessing the weapon; and (4) even if Defendants found the weapon in front of his cell, Plaintiff could not be held accountable for it because it was not under his control. [Doc. No. 101, at 5.]

Plaintiff argues that a legitimate correctional goal did not exist because Defendant Amat falsified the Crime/Incident Report by reporting that the weapon was found in front of Plaintiff's cell as opposed to the day room floor where Plaintiff alleges. [Doc. No. 101, at 5.] Plaintiff, however, fails to provide any evidence to support where the weapon was found other than Plaintiff's own declaration. [Doc. No. 30, at 4; Doc. No. 101, at 5]. Plaintiff further argues that the discrepancies between the Crime/Incident Reports and the Rules Violation Reports "bears upon the reliability of Defendant Catlett's incident report." [Doc. No. 101, at 5.] Upon review of the record, the Court agrees with the magistrate judge's finding that the reports do not contain an apparent discrepancy. [Doc. No. 95, at 11.] Both the Crime/Incident Reports and the Rules Violation Report note that the weapon was found in front of Plaintiff's cell. [Doc. No. 85-6, at 6, 18.] Plaintiff's assertion that the Rules Violation Report stated the weapon was found "in the laundry that came out of" Plaintiff's cell whereas the Crime/Incident Report noted it was found "while collecting laundry in front of " Plaintiff's cell does not support a finding of any such discrepancy. [Doc. No. 101, at 5.] Plaintiff also argues a legitimate correctional goal did not exist because both he and his cell mate were later exonerated for possession of the weapon. [Doc. No. 101, at 5.] This disciplinary hearing decision, however, was based on the fact that the weapon was found in front of Plaintiff's cell, a common area, and there was no evidence to prove it was ever under the exclusive control of either inmate. Not withstanding evidence to prove the weapon belonged to either cell mate, under the California Code of Regulations, Title 15 section 3312(a)(3), prison staff are required to document discovery of inmate-manufactured weapons. Defendants therefore properly reported the weapon allegedly found in the common area in front of Plaintiff's cell. For the foregoing reasons, Plaintiff failed to provide evidence proving the absence of a correctional goal for Defendants' conduct. Therefore, Plaintiff did not present a genuine dispute of material fact on the legitimate

correctional goal element of the retaliation claims and the Plaintiff's objection on this issue is OVER-RULED.

### *Conclusion*

Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned has conducted a de novo review of this case. Having carefully reviewed the entire file, the Court finds Judge Lewis' Report and Recommendation to be supported by the record and based on a proper analysis and therefore OVERRULES the objections filed by the parties, [Doc. Nos. 96 and 101], and ADOPTS the R&R, [Doc. No. 95], in its entirety.  Based thereon, Defendants' Motion For Summary Judgment, [Doc. No. 85], is GRANTED terminating this case.  The Court issues a certificate of appealability.

IT IS SO ORDERED.

DATED: January 5, 2012

_____
Hon. Anthony J. Battaglia
U.S. District Judge